Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★

# OPINION

Nos. 04-08-00501-CR & 04-08-00502-CR

Samuel **SCOTT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court Nos. 972642 & 963428
Honorable Monica E. Guerrero, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed:   June 24, 2009

REVERSED AND RENDERED

At issue in this appeal is whether subsections (a)(4) and (7) of the harassment statute are unconstitutionally vague. Because we hold that subsections (a)(4) and (7) are unconstitutionally vague on their face, we reverse the trial court's judgments and render judgments of acquittal.

## BACKGROUND

In two separate cases, Samuel Scott was charged by information with harassing his former wife. He filed motions to quash, arguing that subsections (a)(4) and (7) of the harassment statute are unconstitutionally vague and overbroad. The trial court denied the motions to quash, and Scott then entered a conditional plea of nolo contendere. In each case, Scott was sentenced to two days in jail and a fifty dollar fine. He appeals, arguing that the trial court should have granted his motions to quash because the harassment statute is unconstitutionally vague and overbroad.

## INFORMATION

In Trial Court No. 963428, Scott was charged by information with committing harassment:

> [O]n or about the 5th Day of December, 2005, SAMUEL SCOTT, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did MAKE REPEATED COMMUNICATIONS TO THE COMPLAINANT, to wit: telephone calls, IN A MANNER REASONABLY LIKELY TO HARASS, ANNOY, ALARM, ABUSE, TORMENT, EMBARRASS, AND OFFEND THE COMPLAINANT.

In Trial Court No. 972642, Samuel Scott was also charged by information with committing harassment:

> [O]n or about the 12th Day of March, 2006, SAMUEL SCOTT, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did MAKE REPEATED TELEPHONE COMMUNICATIONS TO THE COMPLAINANT IN A MANNER REASONABLY LIKELY TO HARASS, ANNOY, ALARM, ABUSE, TORMENT, EMBARRASS, AND OFFEND THE COMPLAINANT; to wit: the defendant called the complainant repeatedly by telephone while intoxicated, late at night, leaving abusive and harassing voice mail messages.

## TEXAS HARASSMENT STATUTE

Subsections (a)(4) and (7) of the harassment statute, which is codified in section 42.07 of the Texas Penal Code, provide the following:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he: . . .
>
> > (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another; . . . or
> >
> > (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

TEX. PENAL CODE ANN. § 42.07(a)(4), (7) (Vernon 2003). An "electronic communication" is defined as the following:

> (1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system. The term includes:
>
> > (A) a communication initiated by electronic mail, instant message, network call, or facsimile machine; and
> >
> > (B) a communication made to a pager.

*Id.* § 42.07(b)(1).

The information in Trial Court No. 963428 alleges that Scott violated section 42.07(a)(4) by making repeated telephone calls to the complainant in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend the complainant. The information in Trial Court No. 972642 alleges that Scott, while intoxicated, repeatedly called the complainant by telephone and left "abusive and harassing voice mail messages" late at night in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend the complainant. Because voice mail messages clearly fall within the definition of "electronic communications," Scott argues that in addition to subsection (a)(4), he was also charged with violating subsection (a)(7). We agree that voice mail

messages fall within "electronic communications." Therefore, we will analyze whether subsections (a)(4) and (7) are unconstitutionally vague.

<h2 style="text-align:center">VAGUENESS</h2>

Scott argues that subsections (a)(4) and (7) are void for vagueness on their face in violation of the First and Fourteenth Amendments to the United States Constitution.[1] Specifically, Scott argues that subsections (a)(4) and (7)'s phrase "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" is unconstitutionally vague because "[i]t is impossible for a citizen to know what, in the disjunctive, is meant by this statue's series of vague terms." According to Scott, "[t]hese terms are susceptible to uncertainties of meaning, and because the statute does not establish clear standards for whose sensibilities are to be offended, it is unconstitutionally vague." Similarly, Scott argues that subsections (a)(4) and (7)'s prohibition of "repeated" communications is unconstitutionally vague "because the statute does not define how many communications are prohibited or the period of time over which such communications are not to occur."

*A.     Standard of Review*

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature acted reasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The person challenging the statute must prove its unconstitutionality. *Id.*

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "Vague laws offend several important values." *Id.* "First, because we assume that man is free to steer

---

[1] Scott also argues that the harassment statute is unconstitutionally vague in violation of Article 1, section 8 of the Texas Constitution. Scott, however, does not explain how the Texas Constitution provides more protection than the United States Constitution. Therefore, to the extent that the Texas Constitution does provide more protection than the United States Constitution, Scott has inadequately briefed the issue. *See* TEX. R. APP. P. 38.1(h).

between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* "Vague laws may trap the innocent by not providing fair warning." *Id.* "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09. "Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." *Id.* at 109 (quotations omitted). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Id.* (quotations omitted). Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id.* at 108-09; *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996).

        B.     *Are First Amendment freedoms implicated?*

We first note that if First Amendment freedoms are not implicated, Scott must show that subsections (a)(4) and (7) are unconstitutional as applied to his conduct. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) (explaining that to challenge the vagueness of a law that does not reach constitutionally protected conduct, a person must first show the law is unconstitutionally vague as applied to him because a person "who engages in some

conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *Bynum v. State*, 767 S.W.2d 769, 773-74 (Tex. Crim. App. 1989) (explaining that when First Amendment rights are not implicated, a court must first consider whether the statute is impermissibly vague as applied to the challenging party's specific conduct). However, if First Amendment freedoms are implicated, then Scott may bring only a facial challenge to the statute. That is, "[t]he vagueness doctrine requires different levels of clarity depending on the nature of the law in question." *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998). "Courts demand less precision of statutes that impose only civil penalties than of criminal statutes because their consequences are less severe." *Id.* (citing *Village of Hoffman Estates*, 455 U.S. at 498-99). "However, when the statute's language is capable of reaching protected speech or otherwise threatens to inhibit the exercise of constitutional rights, a stricter vagueness standard applies than when the statute regulates unprotected conduct." *Id.* at 438 (citing *Village of Hoffman Estates*, 455 U.S. at 497). Thus, "[w]hen speech is at stake," allowing a defendant to raise a facial vagueness challenge without showing the statute is vague as applied to his conduct, is "justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." *Id.* (quoting *Gooding v. Wilson*, 405 U.S. 518, 521 (1972)). Thus, we must decide whether subsections (a)(4) and (7) have "the potential to chill some protected expression if [they] do[] not define what is prohibited with sufficient clarity." *Id.*

We hold that subsections (a)(4) and (7) do implicate First Amendment freedoms. What is "annoying," "embarrassing," or even "alarming" may be protected speech. For example, political calls made repeatedly during election season could fall under subsection (a)(4) if the caller is intending to alarm the recipient concerning a particular candidate. Further, we note that

subsection (a)(7)'s "electronic communications" could encompass some talk radio and television programming.

We note that the State argues that no First Amendment freedoms are implicated because there is no authority supporting the proposition that making harassing telephone calls is a constitutionally protected right under the First Amendment. Indeed, some courts have held that harassment, although it may take the form of speech, is not protected speech under the First Amendment and is not "communication." *See Park v. State*, No. 03-04-00760-CR, 2006 WL 2309595, at *2 (Tex. App.—Austin 2006, no pet.) ("Prohibiting harassment is not prohibiting speech because harassment is not protected speech.") (not designated for publication); *see also Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) ("Courts have made a distinction between communication and harassment. The difference is one between free speech and conduct that may be proscribed. Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech."). The Austin Court of Appeals, the Fourteenth Court of Appeals, and the Dallas Court of Appeals have all held that section 42.07(a)(4) does not implicate the First Amendment. *See Park*, 2006 WL 2309595, at *3 ("Appellant has not shown that making repeated telephone calls with an intent to harass another is a constitutionally protected activity, and we have already held that such conduct is not constitutionally protected."); *DeWillis v. State*, 951 S.W.2d 212, 217 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("[W]e find no authority supporting the proposition that causing another person's telephone to ring repeatedly or repeatedly making anonymous telephone calls is a constitutionally protected activity under the First Amendment."); *State v. Johns*, No. 05-97-00862-CR, 1998 WL 549267, at *3 (Tex. App.—Dallas 1998, no pet.) (not designated for publication) ("We agree with the *DeWillis* court that

a person who causes another person's telephone to ring repeatedly or repeatedly making anonymous telephone calls to another person is not a constitutionally protected activity under the First Amendment."). What these courts have, in essence, held is that the harassment statute cannot implicate the First Amendment because it prohibits what it considers to be harassment. As explained recently by the Fort Worth Court of Appeals in *Karenev v. State*, 258 S.W.3d 210, 213 (Tex. App.—Fort Worth 2008), *rev'd on other grounds*, 281S.W.3d 428 (Tex. Crim. App. 2009),[2] the problem with this argument "is that it is the challenged statute itself that defines harassment." "Unless the harassment statute is sufficiently clear to withstand constitutional scrutiny, no unlawful harassment exists that would be excluded from First Amendment protection." *Id.*

We note that in explaining that the First Amendment is not implicated, the Austin Court of Appeals has stated that subsection (a)(4) "does not criminalize telephone calls made with legitimate intentions to communicate and only prohibits calls specifically intended to 'harass, annoy, alarm, abuse, torment, or embarrass.'" *Park*, 2006 WL 2309595, at *2. However, as stated earlier, we can envision a scenario where political phone calls are made with intent to "alarm" voters about a candidate's opponent.

Further, we note that in *Long v. State*, 931 S.W.2d 285, 292 (Tex. Crim. App. 1996), the court of criminal appeals recognized that some courts from other jurisdictions had upheld statutes by construing them to punish conduct only when the actor's *sole* intent was to engage in conduct not

---

[2] On April 22, 2009, the Texas Court of Criminal Appeals reversed the opinion by the Fort Worth Court of Appeals, holding that the court of appeals should never have reached the facial challenge to the harassment statute because Karenev did not make a facial challenge to the constitutionality of the statute in the trial court. *Karenev v. State*, 281 S.W.3d 428, 429 (Tex. Crim. App. 2009). Thus, the court of criminal appeals held that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute." *Id.* at 434.

protected by the First Amendment. Subsections (a)(4) and (7), however, do not limit the offense to a person with the *sole* intent to engage in conduct not protected by the First Amendment.

We, therefore, hold that subsections (a)(4) and (7) implicate First Amendment freedoms and will now turn to Scott's facial vagueness challenge to subsections (a)(4) and (7).

C. *Are subsections (a)(4) and (7) unconstitutionally vague on their face?*

Scott claims that the terms "annoy," "alarm," "abuse," "torment," and "embarrass" contained in subsections (a)(4) and (7) are unconstitutionally vague. Scott also argues that the term "repeated" communications, contained within both subsections, is unconstitutionally vague as well because it does not indicate how many communications are prohibited or the period of time over which such communications are not to occur. We agree.

1. *Are the terms "annoy," "alarm," and "embarrass" unconstitutionally vague?*

Scott argues that subsections (a)(4) and (7)'s prohibition on intending to "harass, annoy, alarm, abuse, torment, or embarrass another" by making communications "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass or offend another" is unconstitutionally vague because these terms are inherently vague. Scott emphasizes that subsections (a)(4) and (7) do not define an objective standard by which to measure what level of annoyance or alarm is prohibited. For support, he relies on *May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989), which held the pre-1983 harassment statute to be unconstitutional, and *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996), which held the "stalking" provision of the 1993 harassment statute to be unconstitutional. Scott argues that the current harassment statute still suffers from the same infirmities as those held to be unconstitutional in *May* and *Long*.

In response, the State argues that the terms contained in subsections (a)(4) and (7) are not vague because (1) a person must act with *intent to harass or annoy*; (2) there is a means prong that specifies this intentional harassment must be instigated by telephone communication; and (3) the phrase "reasonably likely" is an objective standard.

  *a.  Do subsections (a)(4) and (7) contain a reasonable person standard?*

With regard to the last argument, the State recognizes that *Long* held "reasonably likely" was not an objective standard. *Long*, 931 S.W.2d at 289-90. Nevertheless, the State argues that *Long* "warrants reconsideration." We, of course, cannot reconsider *Long*'s holding, as *Long* was decided by the Texas Court of Criminal Appeals.

In the alternative, the State argues that the lack of an objective standard is not necessarily fatal to a statute's constitutionality. Indeed, the *Long* court noted that "the absence of a reasonable person requirement is not necessarily fatal to the statute's constitutionality." *Long*, 931 S.W.2d at 290. The court explained that other provisions could sufficiently define an offense to avoid a vagueness problem. *Id.*

As an example, the court pointed to a Kentucky disorderly conduct statute addressed by the Supreme Court in *Colten v. Kentucky*, 407 U.S. 104 (1972). *Long*, 931 S.W.2d at 290. According to that statute, a person was guilty of disorderly conduct if, with intent to annoy or alarm, a person congregated with other people in a public place and refused to comply with a lawful order of the police to disperse. *Long*, 931 S.W.2d at 290 (quoting *Colten*, 407 U.S. at 108). The court of criminal appeals explained that, in that context, "annoy" and "alarm" were not vague because a person would understand that he could be convicted under the statute if he failed to obey an order to move on. *Id.* That is, "the refusal to comply with a lawful order to disperse, combined with an intent to annoy,

rendered the statute sufficiently clear to defeat a vagueness challenge." *Id.* Here, however, subsections (a)(4) and (7) do not contain "other provisions" that would sufficiently define annoy and alarm.

b.    *Does the requirement that a person must act with intent to harass or annoy and a means prong requiring the conduct to be instigated by telephone save section 42.07(a)(4) from vagueness?*

The State argues that even if section 42.07(a)(4) does not contain a reasonable person standard, it is still not unconstitutionally vague because it has a requirement that one must act with intent to harass or annoy and it has a means prong requiring the conduct to be instigated by telephone.

As noted previously, in *Long*, the court of criminal appeals held that even without a reasonable person standard, other provisions may sufficiently define a statute to avoid a vagueness problem. In looking at whether the Texas stalking statute had such other provisions, the court distinguished the Texas statute from the Kentucky statute in *Colten*, noting that "the stalking statute does not require that the predicate acts be related to each other in any fashion." *Long*, 931 S.W.2d at 291. "The absence of any nexus between the threat requirement in (a)(7)(B) and the conduct requirement in (a)(7)(A) strongly supports viewing the two subsections separately and requiring each to pass constitutional muster on its own." *Id.* "The lack of any connection between the predicate acts distinguishes the present case from *Colten*." *Id.* The court noted that the statute in *Colten* involved two elements of conduct: (1) congregating in a public place, and (2) refusing to comply with a lawful order to disperse. *Id.* at 291-92. "Both of these elements of conduct involve what is in essence a single act: a gathering of people who refuses to disperse." *Id.* at 292. The court then went on to examine decisions from other jurisdictions, noting harassment statutes that had been upheld

contained some sort of a "nexus requirement." *Id.* For example, an Illinois statute required a threat and relevant conduct *in furtherance of the threat*. *Id.* Other states had required the conduct show a "continuity of purpose." *Id.*

Subsections (a)(4) and (7), however, are not like the Kentucky statute in *Colten*. Section 42.07(a)(4)'s requirement that communication be instigated by telephone, even combined with the intent to annoy or alarm requirement, does not sufficiently render the statute sufficiently clear to defeat a vagueness challenge. Unlike in *Colten*, there is no clear order, like the one to disperse, from which one would know he is breaking the law.

In *Long*, 931 S.W.2d at 292, the court of criminal appeals also explained all the statutes that had been upheld contained "additional limiting elements not found in the Texas criminal statute." *Id.* at 293. "Many limit the vagueness of the conduct described by linking it to more specific conduct through a continuity of purpose requirement." *Id.* "Others tie the conduct together with a more specific mental state than a mere intent to annoy, such as intent to place in fear of bodily injury, or with a more intense mental state, such as intent to frighten." *Id.* "In addition to creating greater specificity, these kinds of limiting elements help to avoid a vagueness problem by taking the First Amendment out of the picture." *Id.* Conduct that alone would constitute protected activities may be actionable if it is part of a common plan that includes activity that is clearly unprotected. *Id.* "And, while conduct does not lose First Amendment protection because the actor intends to annoy the recipient, such conduct is much less likely to enjoy protection where the actor intends to 'frighten' the recipient, and such conduct is unlikely to enjoy any protection where the actor intends to place the recipient in fear of death or bodily injury." *Id.* "If the First Amendment can be removed from the

arena, a stalking statute can be evaluated under more deferential due process standards, and is thus more likely to survive scrutiny." *Id.*

The court then explained that the threat requirement in the Texas stalking statute did not successfully remove the First Amendment from the purview of the offense. *Id.* "In the absence of any nexus between the threat requirement and the conduct requirement, there is a real likelihood that the statute could chill the exercise of protected First Amendment expression." *Id.* "If the threat is the first predicate act, then any future conduct that is annoying (or harassing, alarming, etc.) could trigger the application of the statute – so long as both predicate acts were directed at the same person – even though the second predicate act consists entirely of protected First Amendment activity." *Id.* "This situation in essence holds protected activity hostage once a person engages in one proscribed act that is not protected." *Id.* The court then gave the following example: "a political protester who crosses the line and makes a threat might find himself forever barred from engaging in peaceful and legitimate expression for fear of subjecting himself to punishment for stalking." *Id.* "The legislature may legitimately punish the threat, but it should not be permitted to hold someone's First Amendment rights forever hostage after he makes such a threat." *Id.* at 293-94.

We fail to see how subsection (a)(4)'s requirement that the communication be instigated by telephone, even if combined with the requirement that a person have intent to annoy, alarm, or embarrass, creates a sufficient nexus to overcome the vagueness problem. Nor does such a requirement "successfully remove the First Amendment from the purview of the offense." *Id.* at 293. We, therefore, hold that the phrase "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" contained within subsections (a)(4) and (7) is unconstitutionally vague on its face.

*2.     Is the term "repeated" unconstitutionally vague?*

Scott also argues that subsections (a)(4) and (7)'s prohibition of "repeated" communications is unconstitutionally vague because the statute does not define how many communications are prohibited or over what time period the communications are not to be made. We agree that the term "repeated" is unconstitutionally vague because the statute does not indicate the requisite frequency of the repeated communications. *Karenev*, 258 S.W.3d at 217-18. Does "repeated" "mean that if a person sends three annoying emails over a five-year period, the person is guilty of the offense of harassment?" *Id.* "Can we tell from the statute?" *Id.* at 218. One could make three phone calls over ten years and technically fall under subsections (a)(4) and (7). Therefore, we hold that the term "repeated" contained within subsections (a)(4) and (7) is unconstitutionally vague.[3]

## CONCLUSION

We hold that subsections (a)(4) and (7) are unconstitutionally vague and, therefore, reverse the trial court's judgments and render judgments of acquittal.

Karen Angelini, Justice

Publish

---

[3] Having held that subsections (a)(4) and (7) are unconstitutionally vague, we need not reach Scott's other issues.