IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




Nos. PD-1069-09 & PD-1070-09






SAMUEL SCOTT, Appellant



v.



THE STATE OF TEXAS





ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, Keasler, Hervey, and Cochran, JJ., joined. 
Johnson, J., filed a concurring opinion, in which Cochran, J., joined. 
Keller, P.J., filed a dissenting opinion. Meyers, J., did not participate. 



 The court of appeals held that two subsections of our harassment statute, Texas Penal Code
§ 42.07, were unconstitutionally vague on their face. We reverse.

 On April 24, 2006, in Bexar County, Samuel Scott was charged by information with one
count of harassment, a misdemeanor offense. The information alleged, in relevant part, that:

 "on or about the 5th Day of December, 2005, Samuel Scott, hereinafter referred to
as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass
Yvette Scott, hereinafter referred to as complainant, did make repeated
communications to the complainant, to wit: telephone calls, in a manner reasonably
likely to harass, annoy, alarm, abuse, torment, embarrass and offend the
complainant."


 On July 11, 2006, again in Bexar County, Scott was again charged by information with 
harassment. The information alleged, in relevant part, that:

 "on or about the 12th Day of March, 2006, Samuel Scott, hereinafter referred to as
defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette
Scott, hereinafter referred to as complainant, did make repeated telephone
communications to the complainant in a manner reasonably likely to harass, annoy,
alarm, abuse, torment, embarrass and offend the complainant, to wit: the defendant
called the complainant repeatedly by telephone while intoxicated, late at night,
leaving abusive and harassing voice mail messages."


 Sometime thereafter (the record does not reveal the exact date), Scott filed a motion to quash
the two charging instruments. In his motion, Scott, citing both the First and Fourteenth Amendments
to the United States Constitution, argued that Texas Penal Code § 42.07, the statute under which he
was charged, was unconstitutional on its face (1) because it was both unduly vague and overbroad. (2) 
He argued further that the statute's vagueness and overbreadth threatened "to induce individuals to
forgo [their] First Amendment rights [to free speech] for fear of violating an unclear law." Scott,
citing our decision in Long v. State, 931 S.W.2d 285, 288 (Tex.Crim.App. 1996), noted that "when
[as here] a vagueness challenge involves First Amendment considerations, a criminal law may be
held facially invalid even though it may not be unconstitutional as applied to the defendant's
conduct." Notably, Scott did not argue that § 42.07 was vague as applied to his conduct, i.e., that
the statute failed to give him a reasonable opportunity to know that the conduct for which he was
charged was prohibited. (3)

 On June 25, 2008, the trial court held a hearing on Scott's motion to quash. Neither Scott
nor the State presented any evidence at that hearing. Just after the start of the hearing, Scott
explained to the trial court that he believed that the April 24, 2006 information had been brought
under Texas Penal Code § 42.07(a)(4), whereas he believed that the July 11, 2006 information had
been brought under § 42.07(a)(7). (4) Toward the end of the hearing, Scott, when queried on the matter
by the trial court, appeared to concede that both charging instruments had been brought under §
42.07(a)(4).

 As for the substance of his motion to quash, Scott reiterated the arguments that he had made
in his written motion. In addition, he argued that: (1) § 42.07(a)(4) and (a)(7) were both
unconstitutionally vague and overbroad on their face because the terms "annoy" and "alarm"
included in those statutory subsections were "inherently vague"; (2) neither statutory subsection
clearly indicated "whose sensibilities must be offended"; (3) neither statutory subsection clearly
indicated "the standard by which the [prohibited] conduct [was] to be assessed"; and (4) the specific
intent elements included in the statutory subsections did not save them from vagueness.

 The State, in response, did not address the merits of Scott's arguments. Instead, the State 
argued simply that "[t]here is no court that has any jurisdiction over this specific [trial] court that has
ruled that specific statute to be unconstitutionally vague."

 At the conclusion of the hearing, the trial court denied Scott's motion to quash. Shortly
thereafter, Scott pled nolo contendere, pursuant to a plea bargain, to each harassment charge. The
trial court then assessed Scott's punishment in each case at incarceration for two days and a $50 fine.

 On direct appeal, Scott reiterated the arguments that he had made in the trial court. In
addition, he argued, for the first time, (5) that: (1) § 42.07(a)(4) and (a)(7) were both unconstitutionally
vague as applied to his conduct (although he failed to explain how they were unconstitutionally
vague as applied to his conduct); and (2) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague
and overbroad because the terms "abuse," "torment," "embarrass," and "repeated" included in those
statutory subsections were "inherently vague." (6)

 The State, in response to Scott's arguments, argued that: (1) both charging instruments
tracked the language of § 42.07(a)(4) and charged Scott under that statutory subsection; (2) §
42.07(a)(4) was neither unconstitutionally vague nor overbroad; (3) § 42.07(a)(4) did not implicate
the free-speech guarantee of the First Amendment; and (4) "the fact that [Scott] chose [in the trial
court] not to challenge the statute as applied to [his conduct] constitute[d] a failure to preserve [that]
issue for appellate review."

 The court of appeals agreed with Scott's arguments, reversed the trial court's judgments, and
rendered judgments of acquittal. Scott v. State, 298 S.W.3d 264 (Tex.App.-San Antonio 2009). 
More specifically, the court of appeals held that: (1) the July 11, 2006 information, which involved
allegations of harassing voice-mail messages, could have been brought under § 42.07(a)(7) because
voice mail messages fell within the statutory definition of "electronic communication"; (2) §
42.07(a)(4) and (a)(7) both implicated the free speech guarantee of the First Amendment; (7) and (3)
the terms "annoy," "alarm," "abuse," "torment," "embarrass," and "repeated" contained in the two
statutory subsections were all unconstitutionally vague. (8)

 We granted the State's petition for discretionary review, which raised six grounds, (9) in order
to determine whether the court of appeals erred in its analysis. See Tex. R. App. Proc. 66.3(d).

 We turn first to the State's fourth ground for review, in which the State argues that the court
of appeals erred in addressing the constitutionality of § 42.07(a)(7). The State argues that, contrary
to the court of appeals's conclusion, the July 11, 2006 information against Scott charged him under
§ 42.07(a)(4), not (a)(7). 

 A careful reading of the July 11, 2006 information, which we quoted earlier, reveals that it
tracks the language of § 42.07(a)(4), which we also quoted earlier, but not the language of (a)(7). 
Furthermore, the text of (a)(4) suggests that it covers ordinary voice (and therefore voice mail)
communication involving an ordinary telephone, whereas the text of (a)(7) suggests that it covers
various types of non-telephonic, "electronic" communication, e.g., e-mail, instant message, etc. 
Therefore, we conclude that the July 11, 2006 information against Scott was brought under §
42.07(a)(4) and that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7). 
We sustain the State's fourth ground for review.

 We turn next to the State's second ground for review, in which the State argues that the court
of appeals erred in concluding that § 42.07(a)(4) implicated the free-speech guarantee of the First
Amendment. The question of whether the statutory subsection implicates the free-speech guarantee
is important in the cases before us, because if the statutory subsection does implicate the free-speech
guarantee, then Scott, in making his vagueness challenge, is relieved of the usual requirement of
showing that the statutory subsection was unduly vague as applied to his conduct. See footnote
three, supra. 

 To answer the question of whether § 42.07(a)(4) implicates the free-speech guarantee of the
First Amendment, we must first determine the protection afforded by the free-speech guarantee, and
then we must determine the meaning of § 42.07(a)(4). The First Amendment provides, in relevant
part, that "Congress shall make no law . . . abridging the freedom of speech." This guarantee of free
speech, which was made applicable to the various states by the Due Process Clause of the Fourteenth
Amendment, Gitlow v. New York, 268 U.S. 652, 666 (1925), generally protects the free
communication and receipt of ideas, opinions, and information, Red Lion Broadcasting Co. v. F. C.
C., 395 U.S. 367, 390 (1969); Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942). In a
nation of ordered liberty, however, the guarantee of free speech cannot be absolute. The State may
lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and
information) that invades the substantial privacy interests of another in an essentially intolerable
manner. Cohen v. California, 403 U.S. 15, 21 (1971). (10) 

 Turning to the meaning of § 42.07(a)(4), we find that, given the allegations in the charging
instruments, the relevant portion of (a)(4) reads as follows: "A person commits an offense if, with
intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone
communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment,
embarrass, or offend another." We notice several things about that text. (11) First, the text requires that
the actor have the specific intent to harass, annoy, alarm, abuse, torment, or embarrass the recipient
of the telephone call. That is, the text requires that the actor have the intent to inflict harm on the
victim in the form of one of the listed types of emotional distress. Second, the text requires that the
actor make repeated telephone calls to the victim; one telephone call will not suffice. (12) Third, the
text requires that the actor make those telephone calls in a manner reasonably likely to harass, annoy,
alarm, abuse, torment, embarrass, or offend an average person. (13) Fourth, the text does not require
that the actor use spoken words. 

 Having examined the text of § 42.07(a)(4), we conclude that it is not susceptible of
application to communicative conduct that is protected by the First Amendment. In other words, the
statutory subsection does not implicate the free-speech guarantee of the First Amendment. The
statutory subsection, by its plain text, is directed only at persons who, with the specific intent to
inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy
and do so in a manner reasonably likely to inflict emotional distress. Given that plain text, we
believe that the conduct to which the statutory subsection is susceptible of application will be, in the
usual case, essentially noncommunicative, even if the conduct includes spoken words. (14) That is to
say, in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage
in the legitimate communication of ideas, opinions, or information; they will have only the intent to
inflict emotional distress for its own sake. To the extent that the statutory subsection is susceptible
of application to communicative conduct, it is susceptible of such application only when that
communicative conduct is not protected by the First Amendment because, under the circumstances
presented, that communicative conduct invades the substantial privacy interests of another (the
victim) in an essentially intolerable manner. (15) We sustain the State's second ground for review.

 Given our disposition of the State's second and fourth grounds for review, we need not reach
the State's remaining grounds for review. We dismiss them.

 Because § 42.07(a)(4) does not implicate the free-speech guarantee of the First Amendment,
Scott, in making his vagueness challenge (16) to that statutory subsection, was required to show that it
was unduly vague as applied to his own conduct. He has not done that. Therefore, his vagueness 
challenge fails.

 We reverse the judgments of the court of appeals and affirm the judgments of the trial court.


DELIVERED OCTOBER 6, 2010

PUBLISH
1. A statute may be challenged as unconstitutional "on its face" or "as applied." A claim
that a statute is unconstitutional "on its face" is a claim that the statute, by its terms, always
operates unconstitutionally. Gillenwaters v. State, 205 S.W.3d 534, 536 n. 2 (Tex.Crim.App.
2006). A claim that a statute is unconstitutional "as applied" is a claim that the statute operates
unconstitutionally with respect to the claimant because of his particular circumstances. Id. at n.
3.
2. A statute may be challenged as unduly vague, in violation of the Due Process Clause of
the Fourteenth Amendment, if it does not: (1) give a person of ordinary intelligence a reasonable
opportunity to know what is prohibited and (2) establish definite guidelines for law enforcement. 
Bynum v. State, 767 S.W.2d 769, 773 (Tex.Crim.App. 1989). A statute may be challenged as
overbroad, in violation of the Free Speech Clause of the First Amendment, if, in addition to
proscribing activity that may be constitutionally forbidden, it sweeps within its coverage a
substantial amount of expressive activity that is protected by the First Amendment. Morehead v.
State, 807 S.W.2d 577, 580 (Tex.Crim.App. 1991).
3. Ordinarily, a criminal defendant who challenges a statute as unduly vague must show
that it is vague as applied to the conduct for which he was charged. Parker v. Levy, 417 U.S.
733, 756 (1974); Bynum v. State, 767 S.W.2d 769, 774 (Tex.Crim.App. 1989). However, if the
challenged statute implicates the free-speech guarantee of the First Amendment - i.e., if the
statute, as authoritatively construed, is susceptible of application to speech guaranteed by the
First Amendment - then the defendant is permitted to argue that the statute is overbroad on its
face because it is unclear whether it regulates a substantial amount of protected speech. United
States v. Williams, 553 U.S. 285, 304 (2008); Gooding v. Wilson, 405 U.S. 518, 520-21 (1972). 
This exception to the usual rule is deemed justified since the otherwise continued existence of the
statute in unnarrowed form would tend to suppress constitutionally protected rights. Gooding v.
Wilson, 405 U.S. at 521. In the cases before us today, Scott's argument, as we understand it, is
that § 42.07 is overbroad on its face because its inherent vagueness makes it unclear whether it
prohibits a substantial amount of protected speech.

 Note: In this opinion, we use the word "speech" and the phrases "communicative
conduct" and "expressive activity" interchangeably; in the First Amendment context, they mean
the same thing.
4. Texas Penal Code § 42.07 provides, in relevant part: 


 (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse,
torment, or embarrass another, he:

 * * *


 (4) causes the telephone of another to ring repeatedly or makes repeated
telephone communications anonymously or in a manner reasonably likely to harass,
annoy, alarm, abuse, torment, embarrass, or offend another;

 * * *


 (7) sends repeated electronic communications in a manner reasonably likely
to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

 

 (b) In this section:

 (1) "Electronic communication" means a transfer of signs, signals, writing,
images, sounds, data, or intelligence of any nature transmitted in whole or in part by
a wire, radio, electromagnetic, photoelectric, or photo-optical system. The term
includes:

 (A) a communication initiated by electronic mail, instant message, network
call, or facsimile machine; and

 (B) a communication made to a pager.
5. Scott's arguments, because they were untimely, were not preserved for appellate
review. Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex.Crim.App. 2006); Tex. R. App. Proc.
33.1.
6. In the court of appeals and in this Court, Scott relies primarily upon Kramer v. Price,
712 F.2d 174 (5th Cir. 1983), reh'g en banc granted, 716 F.2d 284 (5th Cir. 1983), grant of relief
aff'd, 723 F.2d 1164 (5th Cir. 1984); Long v. State, 931 S.W.2d 285 (Tex.Crim.App. 1996); May
v. State, 765 S.W.2d 438 (Tex.Crim.App. 1989); and Karenev v. State, 258 S.W.3d 210
(Tex.App.-Fort Worth 2008), rev'd on other grounds, 281 S.W.3d 428 (Tex.Crim.App. 2009). 
In none of those cases, however, did the court address the primary question that we address
today: whether § 42.07(a)(4), as currently written, implicates the free speech guarantee of the
First Amendment. 
7. The court of appeals explained this particular holding as follows:


 "We hold that subsections (a)(4) and (7) do implicate First Amendment
freedoms. What is 'annoying,' 'embarrassing,' or even 'alarming' may be protected
speech. For example, political calls made repeatedly during election season could
fall under subsection (a)(4) if the caller is intending to alarm the recipient concerning
a particular candidate. Further, we note that subsection (a)(7)'s 'electronic
communications' could encompass some talk radio and television programming." 
Scott v. State, 298 S.W.3d 264, 269 (Tex.App.-San Antonio 2009).
8. Scott v. State, 298 S.W.3d 264, 267, 269, 270 (Tex.App.-San Antonio 2009).
9. The State's petition covers both cases. The State's grounds read as follows:


 (1) Are subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 unconstitutionally
vague?

 

 (2) Do subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 implicate the First
Amendment to the United States Constitution?

 

 (3) Are the term "repeated" and the phrase "in a manner reasonably likely to harass,
annoy, alarm, abuse, torment, embarrass, or offend another," which are both
contained within Texas Penal Code § 42.07(a)(4) and (a)(7), unconstitutionally
vague?

 

 (4) Did the State's allegation that appellant left "voice mail messages" implicate
Texas Penal Code § 42.07(a)(7) in this case, and does that phrase necessarily fall
within the definition of "electronic communication" found at Texas Penal Code §
42.07(b)(1)?

 

 (5) If some part of Texas Penal Code § 42.07 is unconstitutionally vague, did the
Court of Appeals err by declaring it vague and acquitting appellant instead of
applying a narrow construction to the statute to avoid the alleged vagueness?

 

 (6) Has the Court of Appeals improperly determined that because subsections (a)(4)
and (a)(7) of Texas Penal Code § 42.07 allegedly implicate the First Amendment and
might curtail protected speech those subsections are vague, when the proper question
should have been whether the subsections are overbroad?
10. See M. Royall, Constitutionally Regulating Telephone Harassment: An Exercise in
Statutory Precision, 56 U. Chi. L. Rev. 1403, 1418 (1989) (The Cohen v. California
"intolerability" standard is "useful [for] evaluating telephone harassment statutes.").
11. When we interpret a statute, our constitutional duty is to determine and give effect to
the apparent intent of the legislators who voted for it. In determining this apparent legislative
intent, we focus our attention on the text of the statute and ask ourselves, how would ordinary
legislators have understood that text? Whitehead v. State, 273 S.W.3d 285, 288 (Tex.Crim.App.
2008); Boykin v. State, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). We also presume that the
legislators were aware of their constitutional obligations and intended a constitutional statute. 
State v. Edmond, 933 S.W.2d 120, 124 (Tex.Crim.App. 1996); 82 C.J.S. Statutes § 381 (2009).
12. The term "repeated" is commonly understood to mean "reiterated," "recurring," or
"frequent." Webster's Ninth New Collegiate Dictionary 998 (1988); 2 Oxford English
Dictionary 2494 (1971). Here, we believe that the Legislature intended the phrase "repeated
telephone communications" to mean "more than one telephone call in close enough proximity to
properly be termed a single episode," because it is the frequent repetition of harassing telephone
calls that makes them intolerable and justifies their criminal prohibition. See M. Royall,
Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision, 56 U.
Chi. L. Rev. 1403, 1430 (1989) ("Prudence may justify a hands-off policy for single calls made
with the intent to harass, but as harassing calls are repeated the state interest in intervening to
protect the recipient becomes more compelling.").
13. The terms "harass," "annoy," "alarm," "abuse," "torment," "embarrass," and "offend"
all have commonly understood definitions that are relevant in this context. "Harass" means "to
annoy persistently." "Annoy" means to "wear on the nerves by persistent petty unpleasantness." 
"Alarm" means "to strike with fear." "Abuse" means "to attack with words." "Torment" means
"to cause severe distress of the mind." "Embarrass" means "to cause to experience a state of
self-conscious distress." "Offend" means "to cause dislike, anger, or vexation." Webster's Ninth
New Collegiate Dictionary 47, 68, 88, 405, 552, 819, and 1245 (1988). 
14. In Jones v. Municipality of Anchorage, 754 P.2d 275 (Alaska 1988), the court
addressed the constitutionality, under the First Amendment, of a city ordinance that read: "It is
unlawful for any person to anonymously or repeatedly telephone another person for the purpose
of annoying, molesting, or abusing through patently offensive and profane language, or harassing
that person or his family." The court upheld the ordinance, explaining, in relevant part, that the
ordinance "restrict[ed] speech only when it [was] essentially noncommunicative - in other
words, only when the speech [was] devoid of any substantive information and [was] solely and
specifically intended by the speaker to evoke an adverse emotional response from the listener." 
Id. at 279.

 In State v. Thorne, 333 S.E.2d 817 (W. Va. 1985), the court addressed the
constitutionality, under the First Amendment, of a statute that read: "It shall be unlawful for any
person to harass or abuse another by means of [a] telephone to . . . [m]ake repeated telephone
calls, during which conversation ensues, with intent to harass any person at the called number." 
The court upheld the statute, explaining, in relevant part: "Prohibiting harassment is not
prohibiting speech, because harassment is not speech. Harassment is not communication,
although it may take the form of speech. The statute prohibits only telephone calls made with the
intent to harass. Phone calls made with an intent to communicate are not prohibited." Id. at 819.

 In State v. Elder, 382 So.2d 687 (Fla. 1980), the court addressed the constitutionality,
under the First Amendment, of a statute that read: "Whoever by means of telephone
communication . . . [m]akes a telephone call, whether or not conversation ensues, without
disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called
number . . . shall be guilty of a misdemeanor." The court upheld the statute, explaining, in
relevant part, that the statute was "not directed at the communication of opinions or ideas, but at
conduct, that is, the act of making a telephone call or a series of telephone calls, without
disclosing identity and whether or not conversation ensues, with the intent to annoy, abuse,
threaten or harass the recipient of the call. That this conduct may be effected in part by verbal
means does not necessarily invalidate the statute on freedom of speech grounds." Id. at 690.
15. In State v. Smith, 392 N.Y.S.2d 968 (App.Div. 1977), the court addressed the
constitutionality, under the First Amendment, of a statute that read: "[A person commits an
offense] when, with intent to harass, annoy, threaten or alarm another person, he [c]ommunicates
. . . with a person, anonymously or otherwise, by telephone . . . in a manner likely to cause
annoyance or alarm." The court upheld the statute, explaining, in relevant part, that the statute
"was intended to include . . . communications which are directed to an unwilling recipient under
circumstances wherein substantial privacy interests are being invaded in an essentially intolerable
manner." Id. at 791.
16. As we explained in footnote three, supra, we understand Scott's argument to be that §
42.07(a)(4) is overbroad because it is inherently vague.