Robert **WEBB** and Kathy Webb, Appellants

v.

**GLENBROOK OWNERS ASSOCIATION, INC.,** Appellee.

No. 05–07–01122–CV.

Court of Appeals of Texas, Dallas.

Oct. 1, 2009.

John Glenn Meazell, John Meazell, P.C., Plano, TX, for Appellant.

R. Michael Northrup, Cowles & Thompson, P.C., Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION ON REHEARING

Opinion By Justice MURPHY.

We overrule appellee's motion for rehearing. On our own motion, we withdraw our opinion of August 6, 2009, and vacate our judgment of that date. This is now the opinion of the Court.

This case involves a dispute between homeowners Robert and Kathy Webb and Glenbrook Owners Association, Inc. In ten issues, the Webbs appeal the trial court's judgment following a jury verdict finding the Webbs violated Glenbrook's restrictions by constructing a shed on their property and that various instances of the Webbs' conduct created nuisances. In their first issue, the Webbs complain that jury question twenty regarding construction of the shed was outside the written pleadings and Glenbrook failed to amend prior to jury submission. We resolve the first issue in the Webbs' favor and reverse and remand for further proceedings. We therefore do not reach related issues two through seven. In issues eight and ten, the Webbs assert the evidence was legally insufficient to support the nuisance findings and that the trial court's twelve permanent injunctions are vague, overly broad, or unsupported by the jury findings. We resolve issue eight as to legal sufficiency of the evidence against the Webbs. With respect to the injunctions made the subject of issue ten, we sustain as to the scope of six of the injunctions and reverse and remand those for further proceedings; we sustain as to three of the injunctions and reverse and render; we overrule as to two of the injunctions and

affirm. Based on our resolution of these issues, we vacate the judgment as to attorney's fees, which was the subject of issue nine, and remand for further proceedings. Otherwise, the judgment is affirmed.

## BACKGROUND

Glenbrook sued the Webbs for breach of the Declaration of Covenants and Assessments for Glenbrook Estates (Declaration) seeking statutory damages under section 202.004(c) of the property code. *See* TEX. PROP.CODE ANN. § 202.004(c) (Vernon 2007) (court may assess civil damages for violation of restrictive covenant in amount not to exceed $200 for each day of violation). Glenbrook also sought attorney's fees and an injunction to prevent construction of a shed on the Webbs' property and to stop claimed nuisances. The nuisance allegations accused the Webbs of (1) filming and photographing neighbors on the neighbors' property, (2) yelling curse words and participating in lewd and lascivious behavior in front of neighbors and neighbors' families (including young children), (3) gesturing obscenely to neighbors, (4) shooting firearms on their property, (5) driving vehicles on their property in an unsafe and annoying manner, and (6) playing loud and sometimes obscene music for extended periods of time.

The jury returned a verdict in Glenbrook's favor. Based on the verdict, the trial court rendered a final judgment against the Webbs awarding $55,000 in civil damages pursuant to section 202.004(c) of the property code and $40,400 in attorney's fees. The trial court, pursuant to its findings of fact and conclusions of law, based the statutory damage award on the jury's answer to question twenty regarding construction of the shed.

The final judgment also included permanent injunctions commanding the Webbs, "as well as their children, relatives, agents, servants, employees, representatives, attorneys and those persons in active concert or participation with them who receive actual notice of [the] Permanent Injunction," to refrain from activities contained in eleven paragraphs. Additionally, two of those injunctions commanded Robert and Kathy Webb, individually, "to refrain from playing any music from any vehicle located on the Property," and "to refrain from driving any vehicles on the Property at a speed in excess of 10 miles per hour."

## THE COURT'S CHARGE

■ In their first issue, the Webbs contend the trial court erred in submitting jury question twenty as being outside the written pleadings. With respect to construction of the shed, Glenbrook's current pleading on file at the time the case was submitted to the jury alleges: "Defendants are currently having a shed constructed on the Property (the 'Shed'). Defendants have not submitted a proposal for such Shed to the Glenbrook Board of Directors and no approval has been given allowing Defendants to construct a structure of any kind." The related jury question twenty, submitted over the Webbs' objections, asked:

> Do you find, by preponderance of the evidence, that the location of the Webbs' outbuilding is in violation of the specific approval originally obtained from the Architectural Control Committee or architectural standards of the Association and is, therefore, in violation of the Declaration of Covenants and Assessments for Glenbrook Estates?

The jury answered "yes." The trial court awarded statutory damages of $55,000 solely as a result of that finding.

The Webbs argue that Glenbrook's petition addresses only the Webbs' alleged failure to obtain approval for construction of the shed. As part of an agreed prelimi-

380

nary injunction and at trial, Glenbrook conceded the Webbs received an initial approval for the shed. Glenbrook asserted that the Webbs, contrary to such approval, placed the shed in the wrong place. The Webbs also complain that the pleadings make no mention of an alleged violation of any "architectural standards" and that it is impossible to determine whether the jury answered "yes" to the question of whether the Webbs violated specific approval originally obtained, violated "architectural standards" of Glenbrook, or both.[1]

■ We review claimed error in the court's charge under an abuse of discretion standard. *See Tex. Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A trial court's clear failure to analyze and apply the law correctly constitutes an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding); *Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex.App.-Dallas 2007, no pet.).

■ Jury questions must be supported by the pleadings. *Gibbins v. Berlin*, 162 S.W.3d 335, 341 (Tex.App.-Fort Worth 2005, no pet.); *McReynolds v. First Office Mgmt.*, 948 S.W.2d 342, 345 (Tex. App.-Dallas 1997, no writ). *See also* Tex.R. Civ. P. 278 ("The court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). Although issues may be tried

by consent, "written pleadings, before the time of submission, shall be necessary to the submission of questions...." Tex.R. Civ. P. 67; *Gibbins*, 162 S.W.3d at 342. Trial by consent does not occur where the complaining party properly objects to the submission of issues not raised by the pleadings. *Harkey v. Tex. Employers' Ins. Ass'n*, 146 Tex. 504, 509, 208 S.W.2d 919, 922 (1948). Stated differently, trial by consent is precluded where proper objection is made on the record before submission to the jury. *Tex. Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 803 (Tex.App.-Houston [14th Dist.] 1996, writ denied). A clear abuse of discretion exists when the trial court submits a jury question that is neither supported by the pleadings nor tried by consent. *Stephanz v. Laird*, 846 S.W.2d 895, 902 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

■ Similarly, a trial court's judgment must conform to the pleadings. *See* Tex.R. Civ. P. 301. "A court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void." *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex.Civ.App.-Dallas 1975, no writ). Absent trial by consent, judgment on an unpled action is void. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979).

At trial, the Webbs' attorney objected when testimony was first offered regarding the building Glenbrook alleged in its petition was never approved:

QUESTION BY COUNSEL FOR GLENBROOK: Now, did the Webbs ever build the building that is depicted as "A" on Exhibit 55?

1. The Webbs also contend in issue six that the trial court erred in awarding civil fines for a violation based on construction of the shed because of the disjunctive wording of question twenty. They argue it is impossible to determine which question the jury answered and, even if allowed, there is no evidence or insufficient evidence that the shed violated architectural standards. For the reasons stated in this opinion, we do not reach the merits of issue six.

COUNSEL FOR THE WEBBS: Your Honor, I am going to object to that line of questioning. It is outside of the pleadings. The pleadings are very specific as to that building, and the pleadings are that they did not have approval to construct a shed on the property. That's the pleadings. That she has testified that [the Webbs] did have approval, and we want to limit the testimony as to that cause of action exactly to the pleadings.

The trial court overruled the objection. Throughout the jury charge conference with the trial court, the Webbs were persistent in their continued objections, stating: "Judge, there are no architectural standards. That's our complaint since day one"; "They didn't say that in their pleadings"; "I objected before and—before they ever got their first word in"; "The Plaintiff should be limited to Plaintiff's pleadings"; "I object because it is not—it is not consistent with the pleadings." The Webbs were unrelenting in their continued objections to trying the issue, as ultimately framed in jury question twenty, of whether the "location of the Webbs' outbuilding is in violation of specific approval originally obtained from the Architectural Control Committee or architectural standards of the Association." The Webbs' final objection did not waiver:

> THE COURT: ... Do you find by a preponderance of the evidence that the location of the Webbs' outbuilding is in violation of the specific approval originally obtained from the Architectural Control Committee or architectural standards of the association and is therefore in violation of the declaration of covenants and assessments for Glenbrook estates?
>
> COUNSEL FOR GLENBROOK: I am good with that.
>
> THE COURT: Mr. Floyd?

> COUNSEL FOR THE WEBBS: *I am going to make my standard objection.*
>
> THE COURT: Which is what?
>
> COUNSEL FOR THE WEBBS: *I think it amounts to—it is a variance from the pleadings. It allows them to open it up beyond what their pleadings were, and their pleadings were quite clear. They were going to come in here and prove that there was no approval of any kind, and they haven't done it. And now they are trying to get around their failure to prove their case.*
>
> THE COURT: ... Your objection is overruled.

(Emphasis added).

Despite the Webbs' repeated objections, Glenbrook never sought leave to amend or attempted to amend its petition prior to submission of the jury charge. Glenbrook did not argue at trial that the issues had been tried by consent. Glenbrook argues that its request for an injunction to prevent the Webbs from making improvements until they had complied with the terms and conditions of the Declaration was sufficient for the submission of question twenty. The request for injunction was not an independent claim, however, but was a request for relief based on the pleaded cause of action for failure to obtain approval of "any kind."

Even if Glenbrook's pleading is sufficiently broad to cover the location of the shed, as opposed to a complete failure to obtain approval, Glenbrook's response to issue one ignores the Webbs' objection to the disjunctive part of the question asking about an alleged violation of "architectural standards." Glenbrook asserts the Webbs waived a complaint about the pleadings or, alternatively, the pleadings were sufficient in light of the agreed temporary injunction. The agreed temporary injunction recites the Webbs' violation of the Glenbrook

Declaration by constructing a shed in a different place from that approved by Glenbrook.[2] In its petition, Glenbrook asserted in its requested injunctive relief that if the Webbs were allowed to continue construction, the "architectural and aesthetic appearances of the neighborhood will be compromised." Glenbrook did not plead, however, that the Webbs violated architectural standards, nor did Glenbrook identify in its pleadings any architectural standards claimed to exist. Testimony at trial in fact showed Glenbrook had no architectural control board separate and distinct from the board of directors, there were no written procedures for approval or disapproval of plans, and there were no written documents defining what standards applied. Glenbrook's board of directors was vested with sole discretion under the Declaration to determine what was in harmony with the community and neighborhood in approving or rejecting construction.

Glenbrook's "written pleadings, before the time of submission," were insufficient to support submission of jury question twenty, and the Webbs' objections to question twenty preclude a finding of trial by consent. See Tex.R. Civ. P. 67; *Gibbins*, 162 S.W.3d at 342; *Harkey*, 208 S.W.2d at 922; *Vaughan.*, 919 S.W.2d at 803. Even if the agreed temporary injunction is considered a pleading regarding placement of the shed, the injunction does not address any alleged violation of architectural standards. Absent pleadings to support the jury verdict, the trial court's judgment on such verdict does not conform to the pleadings, and the judgment as it relates to construction of the shed, including the statutory damage award, is void. *See*

Tex.R. Civ. P. 301; *Ex parte Fleming,* 532 S.W.2d at 123.

We conclude the trial court abused its discretion in the submission of jury question twenty, and this error "was reasonably calculated and probably did cause rendition of an improper judgment." *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). *See also* Tex.R.App. P. 44.1(a)(1). We sustain the Webbs' first issue. We reverse the trial court's judgment awarding $55,000 in statutory damages relating to construction of the shed. We remand to the trial court for further proceedings. *See Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 825 (Tex. App.-Dallas 2003, pet. denied) (when complaint on appeal is that trial judge improperly submitted instruction, definition, or question, reversal is warranted when, in spite of timely objection, trial judge submits invalid theory of liability or unsupported element of damage, and the error prevents complaining party from demonstrating consequence of error on appeal). *See also* Tex.R.App. P. 43.2(d). As a result of our resolution of issue one in the Webbs' favor, we do not reach issues two through seven. *See* Tex.R.App. P. 47.1.

## NUISANCE

■ In issue eight, the Webbs contest the legal sufficiency of the evidence to support the jury's nuisance findings as to (1) operation of security cameras, (2) taking photographs of Glenbrook members and of the neighbors' property, (3) placing animal feces on a neighbor's property, (4) placing a dead rodent on a neighbor's property, and (5) the totality of circum-

2. The injunction was the subject of the Webbs' separate appeal. We dismissed that appeal as moot in light of the trial court's dissolution of the temporary injunction in the period between the day when the Webbs filed their notice of appeal and the day of submission. *Webb v. Glenbrook Owners Ass'n, Inc.,* No. 05–07–01663–CV, 2009 WL 998682 (Tex. App.-Dallas Apr. 15, 2009, no pet.).

stances. The Webbs do not contest the factual findings; rather, they focus on the question of whether the acts found by the jury constitute nuisances. The Webbs also do not contest the jury's nuisance findings against the Webbs as to: yelling obscenities at people driving or walking in the vicinity of the Webbs' home and on the property of other Glenbrook members, playing excessively loud and obscene music on the exterior of their property, and making obscene gestures to other Glenbrook members.

In order to preserve a legal sufficiency challenge for appeal after a jury trial, the Webbs must have done one of the following: (1) moved for an instructed verdict; (2) moved for judgment notwithstanding the verdict; (3) objected to the submission of a jury question; (4) moved to disregard the jury finding; or (5) moved for a new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991); *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 385 (Tex.App.-Dallas 2004, no pet.).

The record reveals no motions for instructed verdict, for judgment notwithstanding the verdict, to disregard the jury finding, or for new trial based on a claim of legal sufficiency of the evidence. With respect to the Webbs' objection to the court's charge, the record shows they objected to submission of question twenty-two as being overly broad. That question asked whether the Webbs' conduct, taken in its totality, constituted a nuisance.[3] The only other discernible objection to the referenced acts was a statement by counsel that "[t]here is nothing in the restrictive covenants that says anything about cameras or surveillance cameras," which the trial court appeared to treat as an objection to an unidentified question. The Webbs also objected to the entire charge on the basis of constitutionality. The record does not show the Webbs ever objected in form or substance to the submission of a question based on the sufficiency of the evidence to support a finding of nuisance or that the trial court overruled such an objection. *See* Tex.R.App. P. 33.1(a) (record must show timely request, objection, or motion that states grounds for the ruling with sufficient specificity to make trial court aware of complaint unless specific grounds are apparent; the trial court must rule or refuse to rule).

Based on this record, the Webbs have waived their challenges to the legal sufficiency of the evidence as it relates to the jury's nuisance findings. We overrule the Webbs' eighth issue.

## PERMANENT INJUNCTION

In issue ten, the Webbs contend the trial court erred in rendering injunctions that were vague, overly broad, and unsupported by the jury findings. We review this issue under well known standards.

Whether to grant a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ). Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Hitt v. Mabry*, 687 S.W.2d 791,

---

3. Even if the Webbs' objection to question twenty-two regarding the totality of the circumstances preserved a legal sufficiency complaint, their argument is that such finding fails if one of the bases for nuisance is overturned. Such argument is unsupported by any legal authority, the Webbs have failed to overturn any nuisance finding, and response to question twenty-two is not part of the final judgment rendered by the trial court.

795 (Tex.App.-San Antonio 1985, no writ) (citing *Lower Nueces River Water Supply Dist. v. Live Oak County*, 312 S.W.2d 696, 701 (Tex.Civ.App.-San Antonio 1958, writ ref'd n.r.e.)).

▮▮▮ An applicant for injunctive relief must demonstrate (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Priest*, 780 S.W.2d at 875. The purpose of injunctive relief is not to grant relief for past actionable wrongs or to prevent commission of wrongs not imminently threatened. *Tex. Employment Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex.Civ.App.-El Paso 1976, no writ). Persons seeking the extraordinary remedy of injunction must be specific in pleading the relief sought, and courts are without authority to grant relief beyond that so specified. *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 221 (Tex.App.-Dallas 2005, no pet.) (citing *Hitt*, 687 S.W.2d at 792).

▮▮▮ The law demands clear and complete orders granting injunctions. *See* Tex.R. Civ. P. 683. "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained...." *Id.* An injunction must be as definite, clear, and precise as possible and, when practicable, it should inform the defendant of the acts he is restrained from doing without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. *Villalobos v. Holguin*, 146 Tex. 474,

480, 208 S.W.2d 871, 875 (1948); *Hellenic Inv. v. Kroger Co.*, 766 S.W.2d 861, 866 (Tex.App.-Houston [1st Dist.] 1989, no writ).

▮▮▮ An injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *Hitt*, 687 S.W.2d at 795. An injunction must not be so broad, however, as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *Id.* Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. *Id.* (citing *Hellenic*, 766 S.W.2d at 867). Thus, the entry of an injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.*

The Webbs contest eleven of the permanent injunctions contained in the final judgment.[4] We address each of the injunctions separately.

*1. Not to make any improvements, changes or substantial repairs on or to the exterior of the Property,*[5] *without first submitting a written application for architectural approval to and without first obtaining written approval of, said application from the Glenbrook Owners Association, Inc.'s Board of Directors/Architectural Control Committee, prior to any construction, or physical preparation therefore [sic], on the Property.*

▮▮▮ The Webbs specifically assert this language is vague and too broad. They say the language prevents them from making any changes to the exterior of their property, which read literally could include

---

4. A twelfth injunction required removal of the shed. The Webbs state that has occurred and, therefore, is moot.

5. The term "Property" as used in the injunction is defined as the Webbs' property located at 17 Glenbrook Circle, Lucas, Texas.

mowing grass and replacing an air conditioning unit. They argue the Declaration itself requires only:

No building, fence, wall, mail box, or other structure shall be commenced, erected, or maintained upon the Property, or on any Lot nor shall any exterior addition to, or change or alteration therein, be made, until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to, and approved in writing by, the Board of Directors as to harmony of external design and location in relation to the surrounding structures and topography and as to compliance with the terms hereof.

The requested relief in Glenbrook's petition was to enjoin the Webbs from making improvements to their property until they had complied with the terms and conditions in the Declaration regarding submission of plans and specifications and had obtained written approval from Glenbrook. The trial court stated in its findings of fact that the Webbs had constructed and maintained an outbuilding on their property in a location not approved by Glenbrook and such conduct continued through the day of trial. The Webbs do not contest such finding for purposes of this issue.

The only issue at trial regarding construction was the one shed. By prohibiting any change to the exterior of the property about which there was no complaint by Glenbrook, the language of the injunction exceeds the scope of the pleading, evidence, court's finding, and language of the Declaration. The injunction language also confuses what group or entity must approve any changes by use of the phrase "Glenbrook Owners Association, Inc.'s Board of Directors/Architectural Control Committee." Accordingly, the trial court clearly abused its discretion to the extent it granted relief exceeding the scope of the

pleadings, evidence, and requirements of the Declaration. We reverse this injunction and remand to the trial court for further proceedings.

*2. To refrain from yelling obscenities at all [Glenbrook] members and other people within the boundaries of [Glenbrook], which includes all Lots within [Glenbrook], all [Glenbrook] common areas and all streets within the boundaries of [Glenbrook].*

■ The Webbs claim this injunction is vague and indefinite because Glenbrook is a non-profit corporation, and inferences and conclusions are required to determine whether the reference to boundaries is the real property governed by Glenbrook; if so, they argue, a description of the land is required. The Webbs describe with particularity the Glenbrook community, including the fifty-three lots having forty-nine homes, in their statement of facts on appeal. They also appear to have no difficulty with other injunctions described in this opinion as to the legal description of the Glenbrook boundaries. Issue ten with respect to this injunction is overruled.

*3. To refrain from yelling obscenities at [Glenbrook] members, wherever located.*

■ The Webbs contend this injunction is vague and overly broad. They first argue no allegations or evidence exist that the conduct found by the jury occurred outside the community. They also complain that the term "member" is vague, ambiguous, constantly changing, and no list of those persons has been identified sufficiently for the injunction to be enforceable. The relief Glenbrook sought in its petition was an injunction to prevent the Webbs from "yelling cusswords at people in the Association." No dispute exists that the conduct found by the jury to be a nuisance was directed solely within the

geographic boundaries of the Glenbrook community.

The parties agree that "yelling obscenities" is inappropriate conduct. What we must address, however, is whether, without reference to other records, the injunction is sufficiently specific. *See Computek,* 156 S.W.3d at 222–23. Additionally, we must determine whether the injunction grants relief beyond what was requested or supported by the evidence. *See Holubec v. Brandenberger,* 214 S.W.3d 650, 657 (Tex.App.-Austin 2006, no pet.). Here, we conclude the injunction grants relief beyond that supported by the evidence by extending outside the physical boundaries of the Glenbrook community. The injunction further requires reference to records outside the injunction to determine all "members, wherever located." As a result, the trial court clearly abused its discretion. We reverse this injunction and remand to the trial court for further proceedings.

*4. To immediately remove the cameras located on the exterior of the dwelling, the outbuilding, the fence and in any other location on [the Webbs'] Lot that is not in the interior of their dwelling, that are located on the Property, and to refrain from installation or operation of any surveillance cameras anywhere on the exterior of the Property that are capable of recording any activity located outside of the Property boundaries.*

■ The Webbs attack this injunction as being overly broad because it prohibits legal activity. They also argue the operation of security cameras does not constitute a nuisance; any error in the nuisance finding, however, has been waived as described above. Additionally, the Webbs claim there is no evidence the operation of the security cameras will cause anyone imminent harm.

In its petition, Glenbrook alleges the Webbs' numerous surveillance cameras tape activity of the neighbors and constitute an invasion of neighbors' privacy rights. Glenbrook requested injunctive relief to prevent the Webbs from filming and taking pictures of the neighbors and their families and guests on the Glenbrook property. On appeal, Glenbrook argues that the injunction limits use of cameras capable of recording activity located outside the boundaries of the Webbs' property and, in accordance with the jury's finding, ends nuisance behavior the Webbs refused to cease on their own.

The evidence at trial showed the Webbs had installed perimeter security cameras that activated upon movement on the Webbs' property. When activated, the cameras recorded activity on the Webbs' property as well as property of others. Eric Tombaugh, the Webbs' next door neighbor, testified he complained to Robert Webb about the entire side of the Tombaughs' house being visible on the Webbs' camera. He said Webb's response was that "it didn't matter if [Tombaugh] put an eight-foot privacy fence up, [Webb] could put a camera up above it looking in [Tombaugh's] backyard and there is nothing [Tombaugh] could do about it." Susan Joseph, another next door neighbor to the Webbs also testified the cameras made her uncomfortable and she felt they were an invasion of her privacy. A former neighbor, police officer Chad Wilhelm, testified he had an interest in surveillance, and Robert Webb showed him his system. Wilhelm confirmed that the recordings "showed" other people's property, but that did not make him uncomfortable as a neighbor. Rather, his discomfort was based on neighbors always wanting to discuss different things going on with the Webbs.

The jury found the Webbs' use of the surveillance cameras was a nuisance, and the trial court rendered the related injunction. The only claimed error before us is whether the injunction exceeded the lawful and proper exercise of the Webbs' rights. We must determine whether the injunction was overly broad.

■■■ A common law right to privacy exists under Texas law. *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973). The Texas Constitution guarantees the sanctity of the home and person from unreasonable intrusion. TEX. CONST. art. 1, §§ 9, 25; *Tex. State Employees Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987). To establish a claim of invasion of privacy, a complainant must show (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993). When assessing the offensive nature of the invasion, courts must determine whether the intrusion is unjustified or unwarranted. *Billings*, 489 S.W.2d at 860. One court has held that watching a neighbor from one's own property does not support a finding of invasion of privacy. *See Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex.App.-Tyler 2006, pet. denied) (citing *Aquino*, 853 S.W.2d at 513). Glenbrook does not address any of the above law in its response, nor does it cite any authority in support of its position the injunction is proper.

The injunction prevents use of cameras with the "capability" of recording beyond the Webbs' property. This injunction prohibits exercise of the Webbs' lawful rights and exceeds the relief requested by Glenbrook in its petition. As such, the injunction constitutes a clear abuse of discretion.

Accordingly, we reverse and remand this injunction to the trial court for further proceedings.

*5. To refrain from playing excessively loud music that can be heard outside of the dwelling located on the Property.*

■■■ The Webbs complain this injunction is vague and overly broad because "excessive" is subjective and vague. Glenbrook alleges in its petition that the Webbs play loud and sometimes obscene music for extended periods of time, and it requests an injunction to prevent the Webbs from "playing loud and/or obscene music outside on the exterior of their home which may be heard by neighbors." The Webbs question who is to judge what is excessive when they are playing music at the pool on their two-acre lot. Glenbrook responds that the injunction prevents the Webbs from playing "any music" that can be heard outside their home. With these two competing interpretations, we first address the question of whether the injunction is ambiguous. *See, e.g., Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex.1971) (the same rules of interpretation apply in construing a judgment as in other written instruments); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987) (if contract is susceptible to more than one reasonable interpretation, it is ambiguous).

Glenbrook interprets the words "excessively loud" as merely descriptive of the type of music that could be considered loud enough to be heard outdoors and asserts all such music is prohibited. Glenbrook's interpretation would prevent the Webbs from playing any music capable of being heard outside their home. The Webbs interpret the words to describe the decibel level of music that is not acceptable outdoors. Assuming the trial court did not intend to render an injunction that restrains the Webbs' legal rights to play

music on their own property, the only reasonable interpretation is that argued by the Webbs. The injunction therefore is not ambiguous. *See Id.*

 Turning to the meaning of "excessively loud" music, the trial court has not defined the term. We therefore look to the ordinary meaning of the words. "Excessive" is defined as "exceeding what is usual, proper, necessary, or normal." WEBSTER'S THIRD NEW INT'L DICTIONARY 792 (1981). "Loud" is defined as "marked by intensity or volume of sound." *Id.* at 1339. The Webbs do not suggest any other way to define the decibels of music found by the jury to constitute a nuisance. Using the ordinary meaning of the words, this injunction does not prevent the Webbs from playing music that can be heard; rather, they are restrained from playing music outdoors that is so loud it exceeds what is usual, proper, necessary, or normal. Such restriction is not unlike the reasonable person standard applied to negligence cases[6] and therefore is not so vague or overly broad as to render it unenforceable. *See* Tex.R. Civ. P. 683 (every injunction shall describe in reasonable detail the act sought to be restrained). We overrule issue ten as to this injunction.

*6. To refrain from playing obscene music that can be heard outside of the dwelling located on the Property.*

 The Webbs assert it is "near impossible" to determine what is required of them in this injunction because of the term "obscene." They also argue the injunction is too broad because they have no control over music coming from the radio. Glenbrook alleges in its petition the Webbs played loud and sometimes obscene music for extended periods of time and requested an injunction as described above. Glenbrook cites to no authority or definitions that would establish a basis for a court to enforce this injunction were there to be a claimed violation.

The trial court does not define "obscene" for purposes of this injunction.[7] We therefore look for ordinary meaning of the term. "Obscene" is defined as something that is disgusting to the senses. WEBSTER'S, at 1557. This definition is highly subjective. While some agreement might exist among ordinary reasonable persons as to what is disgusting, there is room for serious disagreement. In the context of behavior constituting criminal harassment, "obscene" is statutorily defined as "containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function." TEX. PENAL CODE ANN. § 42.07(b)(3) (Vernon 2003)[8]. Section 43.21 of the penal code

---

6. "Negligence" is defined as "failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same similar circumstances." *20801, Inc. v. Parker,* 249 S.W.3d 392, 398 (Tex.2008).

7. Reference to "obscene" gestures in the next injunction is defined by examples of conduct prohibited, and the Webbs do not claim vagueness. The Webbs also do not contest as vague the injunction against yelling "obsceni-

ties," and in fact agree that such conduct would be inappropriate.

8. The phrase "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" and the term "repeated" contained within section 42.07(a)(4) and (7) of the penal code were recently declared unconstitutionally vague on their face. *See* TEX PENAL CODE ANN. § 42.07(a)(4) and (7) (Vernon 2003); *Scott v. State,* Nos. 04–08–00501–CR and 04–08–00502–CR, 2009 WL 1789240 (Tex.App.-San Antonio, June 24, 2009).

also addresses the term in the context of public indecency:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporaneous community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs [9]; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

. . .

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

See TEX. PENAL CODE ANN. § 43.21(a)(1), (4) (Vernon 2003). The definition of "obscene" in section 43.21 is virtually identical to the three-pronged obscenity test announced by the United States Supreme Court in *Miller v. Cal.*, 413 U.S. 15, 23–25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *See Reliable Consultants*, 517 F.3d at 740 n. 2.

Legislators and courts have struggled with definitions of obscenity, and they continue to face the challenge of formulating a test capable of defining prohibited behavior and satisfying constitutional requirements. Unlike other parts of the judgment, the trial court gave no guidance in this injunction itself as to the specific prohibited music. The jury, for example, was confronted with testimony regarding specific lyrics and music that neighbors found offensive and the jury agreed was a nuisance. Yet the injunction as worded lacks any reference to what music or lyrics would be the type covered by the injunction. The injunction therefore lacks sufficient specificity required for an enforceable order of the court. *See* TEX.R. CIV. P. 683; *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967); *Villalobos*, 208 S.W.2d at 875. *See also In re Coppock*, 277 S.W.3d 417, 418 (Tex.2009) (permanent injunction restraining communications "in a coarse or offensive" manner is too vague to be enforced by contempt). As a result, the trial court clearly abused its discretion, and we reverse this injunction and remand to the trial court for further proceedings.

7. *To refrain from making obscene gestures, including but not limited to: flipping people off with the middle finger; flashing the loser sign; publicly exposing any female's breasts; publicly exposing any person's private body parts; spitting; undulating in a lewd manner and grabbing genital areas to any [Glenbrook] member, wherever located, and to other people while publicly visible anywhere within the [Glenbrook] boundaries.*

■■■ The Webbs object to this injunction as being vague and overly broad as it relates to conduct outside the Glenbrook community. They also argue the injunc-

---

9. Sections 43.21(5) and (6) regarding promotion or sale of "obscene devices" was declared unconstitutional. *See* TEX. PENAL CODE ANN. § 43.21(a)(5), (6) (Vernon 2003); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir.2008).

tion is vague because Glenbrook is a non-profit corporation and the order lacks sufficient description of the land affected.

Glenbrook's petition alleges the Webbs grabbed their genitals in the front yard and in front of other persons, raised their hands in obscene gestures, and yelled "cusswords" at people. The injunctive relief Glenbrook requested was to restrain the Webbs from making lewd, obscene, or offensive gestures, and from yelling "cusswords" at Glenbrook members. Several witnesses testified to the conduct alleged to have occurred within the Glenbrook community. The parties agree the conduct described would be inappropriate wherever it took place, although the Webbs do not agree the conduct occurred.

Based on this record, the evidence supports the injunction insofar as it seeks to prevent conduct within the Glenbrook community. The restraint exceeds the pleadings and relief requested, as well as the evidence, in that it prevents conduct "wherever located." This injunction is, therefore, a clear abuse of the trial court's discretion in that regard. This injunction is reversed and remanded for further proceedings in conformity with this opinion.

*8. To refrain from taking any photographs, audiotapes and/or videotapes of any property within [Glenbrook], or persons on any premises within [Glenbrook], other than the Property or persons who reside therein or who are guests thereon.*

■ Similar to the injunction proscribing use of security cameras with the capability of recording activity outside the Webbs' property, the Webbs contest this injunction as being overly broad because it prohibits legal activity. They again argue that use of cameras does not constitute a nuisance. As discussed above, any error in the nuisance finding has been waived. Glenbrook does not respond specifically to the use of cameras to photograph persons and things within the Glenbrook community.

At trial, Eric Tombaugh testified that Kathy Webb routinely takes pictures of what is occurring on the Tombaughs' property. Tombaugh testified it annoyed him, because he enjoys his privacy. Sally Stone, another neighbor, testified she saw Kathy Webb standing in her own backyard taking pictures of a barn being built, but her complaints about the Webbs were related to loud music. No one testified the Webbs had trespassed onto other members' property to take photographs.

■ Glenbrook's petition alleges the Webbs have photographed neighbors on the neighbors' property and requests an injunction to prevent the Webbs from taking pictures of the neighbors and their families and guests on the Glenbrook property. On this record, as with our analysis of the surveillance cameras, we must determine whether the injunction was overly broad. The only claimed error before us with respect to this injunction is whether the scope prohibited the lawful and proper exercise of the Webbs' rights. The Declaration has no restriction regarding photographs. As discussed above, the common law right to privacy is not invaded by viewing, or even photographing, persons and objects in plain sight. *See Drennon,* 202 S.W.3d at 320 (citing *Aquino,* 853 S.W.2d at 513). Glenbrook does not address in its response any of these issues or the above law.

The injunction prevents the Webbs from taking "any photographs, audiotapes and/or videotapes of any property within [Glenbrook], or persons on any premises within [Glenbrook]," other than the Webbs' own property. This injunction exceeds the pleadings and requested relief by encompassing any property within Glenbrook, including common areas. The injunction

also prohibits the Webbs' from taking photographs of persons and things in plain sight from common areas and their own property. *See Drennon*, 202 S.W.3d at 320 (citing *Aquino*, 853 S.W.2d at 513). The injunction therefore constitutes a clear abuse of discretion to the extent it prohibits the Webbs from taking photographs from common areas and from their own property. We reverse and remand this injunction to the trial court for further proceedings.

9. *To refrain from disposing of dead rodents or creatures of any species, by placing them on the property of any other member of [Glenbrook].*

■ The Webbs assert this injunction should be dissolved because there was no evidence of any ongoing activity or threats of future activity. Glenbrook does not address the Webbs' argument. Rather, its response in totality is "[t]he injunction appropriately restrains the [Webbs] from such offensive behavior, and if the [Webbs] desire to return dead creatures to nature, they are not fettered by the Injunction from doing so in their own yard." Nowhere in Glenbrook's petition does it allege the Webbs disposed of dead rodents, nor does Glenbrook request any relief related to dead rodents. The evidence at trial was that about a year before trial, Eric Tombaugh observed Robert Webb throwing a dead rodent onto Bob Baldwin's property. Baldwin did not testify at trial, and no other neighbor testified to any incidents. Based on this record, we conclude the trial court clearly abused its discretion in issuing an injunction that exceeds the pleadings, requested relief, and evidence. Therefore, we sustain issue nine as to this injunction and render judgment dissolving the injunction.

10. *To refrain from disposing of animal feces or any other form of excrement or trash, whether biodegradable or not, on the property of any other member of [Glenbrook].*

■ The Webbs seek dissolution of this injunction because there was no evidence their daughter's disposal of dog droppings on other people's property was ongoing or was threatened to continue. Glenbrook's complete response is: "As with the dead creature restraint, the Injunction is appropriately crafted to stop [the Webbs] from the offensive behavior of throwing animal excrement on other neighbors' property, and does not stop them or their offspring from recycling feces in their own yard." Nowhere in Glenbrook's petition does it allege the Webbs disposed of any form of waste, including animal feces, nor does Glenbrook request any related relief. The only evidence at trial was that on several occasions, the Webbs' daughter deposited dog droppings into neighbor Susan Joseph's yard. When Joseph asked her to stop, she did; there were no further incidents.

Based on this record, we conclude the trial court clearly abused its discretion in issuing an injunction that exceeds the pleadings, requested relief, and evidence. We sustain issue ten as to this injunction and render judgment dissolving the injunction.

11. *To refrain from driving vehicles up and down the property lines of the Property, nearer than forty (40) feet to the Property's boundaries lines and to refrain from driving any vehicles on the Property at a speed in excess of 10 miles per hour.*

■ The Webbs seek dissolution of this injunction because no question was submitted to the jury regarding operation of vehicles on the Webbs' or any Glenbrook member's property, and the Webbs claim the evidence does not support a permanent injunction. In its petition, Glenbrook alleges the Webbs' driving of vehi-

cles on their property in an unsafe and annoying manner created a nuisance and requested the Webbs be restrained "from operating machinery and vehicles of any nature on their property closer than 30 feet to the side setback lines." On appeal, Glenbrook failed to respond to the Webbs' arguments regarding this injunction.

With no jury finding to support the injunction, and no dispute by Glenbrook to the Webbs' position on appeal, we conclude the trial court abused its discretion in rendering an injunction that exceeds the requested relief. We sustain issue ten as to this injunction and render judgment dissolving the injunction.

## ATTORNEY'S FEES

In their ninth issue, the Webbs contend the award of attorney's fees should be reversed. Glenbrook sought attorney's fees only under (1) section 5.006(a) of the property code, which mandates an award of attorney's fees to the prevailing party meeting the requirements of that statute, and (2) section 38.001(8) of the civil practice and remedies code, which allows a discretionary award of attorney's fees under the statute and applicable case law. *See* TEX. PROP.CODE ANN. § 5.006(a) (Vernon 2004); TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2008). The trial court's judgment is silent as to the basis for the attorney's fees awarded. Therefore, and in light of our reversal of Glenbrook's award of statutory damages, our reversal and dissolution of three injunctions, and our remand of six injunctions for further proceedings, we reverse the award of attorney's fees and remand to the trial court for further proceedings.

## CONCLUSION

We reverse the trial court's award of damages and remand to the trial court for further proceedings. We vacate the judgment as to attorney's fees and remand to the trial court for further proceedings.

With respect to the eleven permanent injunctions made the subject of issue ten, we reverse and remand to the trial court for further proceedings the injunctions as numbered above 1, 3, 4, 6, 7, and 8; we reverse and render judgment dissolving the injunctions as numbered above 9, 10, and 11; and we affirm the permanent injunctions as numbered above 2 and 5. In all other respects, we affirm the "Final Judgment and Permanent Injunction."