

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00129-CV

Guangcun **HUANG**,
Appellant

v.

Linman **CHANG**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-12481
Honorable Peter Sakai, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:　Beth Watkins, Justice

Sitting:　　　Patricia O. Alvarez, Justice
　　　　　　Beth Watkins, Justice
　　　　　　Lori I. Valenzuela, Justice

Delivered and Filed: October 6, 2021

AFFIRMED AS MODIFIED

In three issues, appellant Guangcun Huang appeals the trial court's final decree of divorce dissolving his marriage to appellee Linman "Sophia" Chang. On August 4, 2021, this court issued an opinion and judgment modifying the trial court's judgment to delete the award of permanent injunctive relief and affirming the judgment as modified. On September 21, 2021, Huang sought rehearing from that opinion. After consideration, we deny Huang's Second Amended Motion for

Rehearing, withdraw our August 4, 2021 opinion and judgment, and substitute this opinion and judgment in their place. Our disposition of this appeal remains unchanged.

## BACKGROUND

Huang and Chang, who are Chinese nationals living in Texas, met on a Chinese dating website in August of 2014. Huang lived in San Antonio and Chang lived in Odessa, where she was a student at the University of Texas Permian Basin. At that time, Huang was in the final steps of obtaining his permanent residency "green card," while Chang was living in the United States on a non-immigrant student visa. Their relationship progressed quickly, and they married in Texas on October 12, 2014, a few days before Huang's final interview for his green card. Before they married, the couple agreed that Chang would stay in Odessa to finish her studies and Huang would remain in San Antonio so his teenage daughter would not have to change schools. They also agreed Chang would move out of her dorm and relocate to off-campus housing so Huang and his daughter could visit on weekends. Finally, they agreed that after Chang graduated, she would move to San Antonio to live with her new husband and stepdaughter. In 2016, Chang obtained her own green card on the basis of her marriage to a green card holder.

Chang did not move into off-campus housing while she remained in school, nor did she relocate to San Antonio after she graduated in May of 2016. Instead, she moved into a rented room in a home in Odessa. The couple's visits were infrequent and they argued often. Huang began to suspect that Chang married him to fast-track her own green card application, and on July 10, 2017, he filed a petition to annul the marriage on grounds of fraud. In September of 2017, he prepared—and Chang signed—an agreed motion to dismiss the annulment petition, but he never filed the motion. Chang filed a counter-petition for divorce and a motion for summary judgment arguing that Huang had ratified any alleged fraud.

The trial court denied Chang's motion for summary judgment, and the parties tried their respective petitions to the bench in July of 2019. After a two-day trial in which both Huang and Chang testified, the trial court denied Huang's petition for annulment, granted Chang's counter-petition for divorce, and found Chang was at fault for the breakup of the marriage. On December 4, 2019, the trial court signed a Final Decree of Divorce that dissolved the parties' marriage "on the grounds of living apart pursuant to Texas Family Code 6.006," repeated the finding of fault against Chang, and ordered Chang to pay Huang's attorney's fees. The decree also permanently enjoined the parties from: (1) "contacting any entity whatsoever regarding the divorce or facts and circumstances of the divorce, including, but not limited to" a list of government agencies, "the other party's employer," and "the other party's co-workers"; (2) "discussing the case on social media"; and (3) "discussing the other party on social media." At Huang's request, the trial court signed findings of fact and conclusions of law. Huang timely appealed.

## ANALYSIS

### *Judicial Admission*

In his third issue, Huang argues Chang stipulated to an annulment by making judicial admissions against her own interest.[1] Huang claims these judicial admissions appear in the unfiled agreed motion to dismiss the annulment. When Huang originally prepared it, the motion to dismiss included a document entitled "Petitioner's Statements" in which Huang detailed his view of the parties' relationship and Chang's conduct. Huang argues Chang judicially admitted the truth of the allegations in the "Petitioner's Statements" document by using a portion of the unfiled motion to dismiss as an exhibit to her motion for summary judgment.

---

[1] We address this issue first because its outcome will determine the weight we attribute to the "Petitioner's Statements" document in our sufficiency analysis.

To constitute a judicial admission, a party's statement must be clear, deliberate, and unequivocal. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). Here, as Huang notes, Chang's summary judgment exhibit shows that the unfiled motion to dismiss stated, "This Agreed Motion to Dismiss is brought by Petitioner [Huang] and Respondent [Chang] who show in support . . . Petitioner's Statements about the initial filing and the current agreed motion pertaining to this case." However, Chang's summary judgment exhibit is a single-page document that requests a dismissal of the annulment but does not include the "Petitioner's Statements" or recite any of the alleged facts contained in the "Petitioner's Statements." None of Chang's other pleadings or motions recite or otherwise concede those alleged facts.

Assuming, without deciding, that the facts recited in the "Petitioner's Statements" document are indeed against Chang's interest, Huang's argument asks us to hold that Chang clearly, deliberately, and unequivocally admitted the truth of factual assertions that: (1) she omitted from her summary judgment evidence; and (2) were never included in any of her pleadings or motions. Huang's cited authority does not support that conclusion, and we decline to reach such a holding here. Moreover, the summary judgment exhibit shows that when Chang signed the unfiled motion to dismiss, she intended the "Petitioner's Statements" document to support the parties' request to *dismiss* the annulment, not to grant it. *See Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (per curiam) (statement in party's live petition was not judicial admission because petition requested relief contrary to purported admission). The record simply does not support a conclusion that the trial court was required to treat the facts alleged in that document as binding judicial admissions.

We overrule Huang's third issue.

***Annulment Versus Divorce***

Having rejected Huang's argument that Chang stipulated to an annulment as a matter of law, we turn to his claim that the evidence shows the trial court abused its discretion by denying his petition for annulment and granting Chang's counter-petition for divorce.

*Standard of Review and Applicable Law*

"A suit for annulment presumes that there never was a valid marriage and that therefore it should be declared void, while a suit for divorce presumes a valid marriage, but asks that the relation be dissolved for postnuptial causes." *Garcia v. Garcia*, 232 S.W.2d 782, 783 (Tex. App.—San Antonio 1950, no writ). A trial court "*may* grant an annulment of a marriage to a party to the marriage if: (1) the other party used fraud, duress, or force to induce the petitioner to enter into the marriage; and (2) the petitioner has not voluntarily cohabited with the other party since learning of the fraud or since being released from the duress or force." TEX. FAM. CODE ANN. § 6.107 (emphasis added); *see also* TEX. GOV'T CODE ANN. § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."). A trial court "may grant a divorce in favor of either spouse if the spouses have lived apart without cohabitation for at least three years." TEX. FAM. CODE ANN. § 6.006. "[E]very marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter." TEX. FAM. CODE ANN. § 1.101.

We review a trial court's ruling on a petition for annulment for abuse of discretion. *In re Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied). "Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion." *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.). We engage in a two-pronged inquiry to determine whether the trial court: (1) had

sufficient information upon which to exercise its discretion; and (2) erred in its application of that discretion. *In re Marriage of Thrash*, 605 S.W.3d at 229. In reviewing the first prong, we apply traditional standards of legal and factual sufficiency. *Id.*

As the petitioner seeking an annulment, Huang bore the burden to prove the parties' marriage was never valid. *See Schacht v. Schacht*, 435 S.W.2d 197, 201 (Tex. App.—Dallas 1968, no writ); *see also* TEX. FAM. CODE § 1.101 (presuming every marriage entered into in Texas valid). When a party attacks the legal sufficiency of an adverse finding on which he bore the burden of proof, he must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Zuniga v. Velasquez*, 274 S.W.3d 770, 773 (Tex. App.—San Antonio 2008, no pet.). We review the evidence in the light most favorable to the finding and ignore all evidence to the contrary. *Id.* "If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* We may not reverse a judgment on legal insufficiency grounds unless the contrary proposition is conclusively established. *Id.* In reviewing the factual sufficiency of the evidence supporting a finding, we examine the entire record and may only reverse the finding if it is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Id.*

In both legal and factual sufficiency review, we defer to the factfinder as the sole judge of the credibility of the witnesses and the weight to give their testimony, and we recognize that the factfinder may choose to believe some witnesses and disbelieve others. *City of Keller v. Wilson*, 168 S.W.3d 802, 818–19 (Tex. 2005). We may not substitute our judgment for the factfinder's, "even if the evidence would clearly support a different result." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

*Application*

The parties agree: (1) they married after a brief courtship and shortly before Huang's final interview for his green card; (2) they lived in different cities, visited each other infrequently, and often argued; (3) Chang did not move to San Antonio after she graduated, did not permit Huang to stay overnight with her in Odessa, and told him to meet her at public places, rather than her residence, when he traveled to Odessa to see her; (4) Chang did not wear her wedding ring; and (5) Chang first mentioned divorce shortly after they married. However, the explanations they offered for these facts differed sharply.

With regard to the immigration issues, Huang testified Chang insisted on marrying before his green card interview to smooth the path of her own immigration process. Chang, in contrast, testified the timing of their wedding was linked to the arrival of her notarized birth certificate from China. Although Chang conceded she later obtained her green card based on her marriage to Huang, she also testified that Huang's green card application had not yet been approved when the couple married. She stated that when they married, she did not know whether Huang's application would be approved or how that approval, if it occurred, would affect her own eligibility. She testified that "even the immigration officer wasn't sure about [her] eligibility" when she first applied for a green card. While Huang testified that Chang frequently talked about how their marriage would allow her to use a "follow to join" program that expedites permanent residency of a green card holder's dependents, Chang testified she was eligible for multiple "pathways to residency," including pathways that were not related to her marriage. She testified Huang himself chose the "follow to join" pathway she eventually used because he believed it was "important for this family," and both parties testified that Huang, not Chang, prepared the paperwork upon which Chang was eventually granted a green card. Although Huang implied Chang wore her wedding ring only briefly because she wanted to strengthen her case during her interview with an

immigration officer, Chang testified the ring was simply too big for her finger. Furthermore, while Huang testified that he believed Chang only married him for immigration purposes, he also presented an audio recording of Chang telling him that if she wanted to marry solely for a green card, she would have married a U.S. citizen. Based on this conflicting evidence, the trial court did not act arbitrarily or unreasonably by rejecting Huang's theory that Chang married him solely for immigration purposes. *See Frezza v. Flores*, 567 S.W.3d 417, 420 (Tex. App.—San Antonio 2018, pet. denied) (in factual disputes, "a trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision") (internal quotation marks omitted).

Huang argues the evidence shows Chang "had no intention to perform her obligations under her marital vows." Again, however, the parties' evidence conflicts on this point. *See id.* Huang testified Chang refused to move to San Antonio or to visit him more often because she was deliberately avoiding him, particularly after she received her own green card in 2016. He testified that Chang refused to give him her address in Odessa and only visited him when she needed to be in San Antonio for tasks related to her immigration process. He also asserted she "uninvited" him to her May 2016 graduation.

Chang, in contrast, testified that she did not hide her address from her husband, and she pointed out her address in Odessa appeared on the statements for their joint bank account. She testified she made multiple visits to San Antonio that were unconnected to her immigration process; that she herself did not attend her graduation; and that she stayed in Odessa longer than the couple originally planned because she had health issues, failed her first round of exams to become a CPA, and eventually accepted a job in Midland that paid more than Huang's job and offered her the possibility of a future transfer to San Antonio. She also testified she did not have a car with which to make the five-hour drive to San Antonio until 2017; she did not invite Huang to

stay with her in the home she rented in Odessa because Huang "agreed not to disturb [Chang's] landlady . . . who's 92 years old"; that Huang told her "a few times" during the marriage that he would move to be with her after his daughter graduated from high school; and that she bought gifts for Huang and his daughter when she visited China in the spring of 2017, shortly before Huang filed for annulment. While the parties agree Chang first mentioned divorce shortly after they married, Chang presented evidence that she did so in response to Huang's complaint that their long-distance arrangement was not a "realistic marriage."

Huang testified Chang told him "she could not accept a remarried family" and that he was "shocked" at that statement because Chang knew he was a single father. However, he also testified that Chang made this statement after learning that her aunt was trying to introduce her father to women after her mother died. Chang testified she made that statement in relation to her father, and that she could not accept it if her father remarried.

Finally, both parties presented evidence that after Huang filed for annulment, he sent Chang emails and text messages stating he loved her, wanted to reconcile, and wanted to buy a car for her. One email stated: "We may still have a chance of reconciliation. Let's say we don't have to live together all the time from now on and you gradually re-welcome me with open arms. I do hope we could resolve our issues and eventually live a happy life together." Huang testified that he sent these messages not because they were true, but because he wanted "to collect more evidence" to use in annulling the marriage. Chang, in contrast, testified that she believed Huang truly wanted to reconcile with her, and the evidence shows she responded to the email above by stating that she "hope[d] the incompatibility can be worked out with gradually passing of the breaking-in period of marriage. . . . Now we both hope to give each other a chance, and that will work out." Chang testified that she loved Huang, believed they were compatible at the beginning of their relationship, and wanted "to try to help my husband help this family." She testified that

while she initially thought Huang was "responsible, protective, and caring," after their marriage she "had a different feeling and [she] felt there's no trust in this marriage."

As with the evidence regarding Chang's immigration process, the trial court could have reasonably resolved this conflicting evidence against Huang's assertion that Chang fraudulently induced him to enter into the marriage. *See id.*; *see also* TEX. FAM. CODE § 6.107. Because the applicable standard of review requires us to defer to the trial court's resolution of that evidence, we cannot conclude that the trial court behaved arbitrarily by rejecting the central premise of Huang's petition for annulment—"that there never was a valid marriage." *See Garcia*, 232 S.W.2d at 783. As a result, the trial court did not abuse its discretion by denying Huang's petition for annulment and granting Chang's cross-petition for divorce.

We overrule Huang's first issue.

### *Permanent Injunctive Relief*

In his second issue, Huang asserts several challenges to the portion of the final decree of divorce that permanently enjoins both parties from "contacting any entity whatsoever regarding the divorce or facts and circumstances of the divorce, including, but not limited to" a list of government agencies, "the other party's employer," and "the other party's co-workers"; "discussing the case on social media"; and "discussing the other party on social media." He argues, inter alia, that this injunction is not supported by the pleadings and evidence. Chang responds that the injunction is appropriate because the evidence shows Huang "intended to harm" her by making reports against her to various federal agencies and the injunction prevents "further action by [Huang] that result [*sic*] in [Chang] being deported from the United States."[2]

---

[2] Chang also argues Huang waived his complaints about "the content or scope of the injunction" by failing to raise those complaints in the trial court. However, the trial court's judgment specifically notes, "[Huang's] objection to the injunction is overruled." We conclude this argument is properly preserved. *See* TEX. R. APP. P. 33.1(a) (to preserve

*Standard of Review and Applicable Law*

To be entitled to a permanent injunction, a party must show: (1) a wrongful act; (2) imminent and irreparable injury arising out of the wrongful act; and (3) no adequate remedy at law. *Orix Capital Markets, LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 44 (Tex. App.—San Antonio 2010, pet. denied). We review a trial court's permanent injunction for abuse of discretion. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 70 (Tex. App.—San Antonio 2011, no pet.). A permanent injunction that is not supported by the pleadings or the evidence is an abuse of discretion and must be dissolved. *See Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 391 (Tex. App.—Dallas 2009, no pet.).

*Application*

As Huang notes, Chang's live pleadings do not request permanent injunctive relief. "Persons seeking the extraordinary remedy of injunction must be specific in pleading the relief sought, and the courts are without authority to grant relief beyond that so specified." *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex. App.—San Antonio 1985, no writ). Here, although Chang requested "general relief," nothing in her pleadings alleged or even implied that Huang had engaged in wrongful acts that threatened her with imminent injury and for which she lacked an adequate legal remedy. *Cf. Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 WL 1888343, at *5 (Tex. App.—San Antonio July 3, 2007, pet. denied) (mem. op.) (wife's request for general relief justified permanent injunction because she alleged husband had abused the children and she requested an order to protect them). The first time Chang indicated she wanted injunctive relief was during her testimony at trial:

---

complaint for appellant review, the record must show the appellant timely raised the complaint below and the trial court ruled on it).

Q.     If Mr. Huang -- if the Court denies the annulment and grants the divorce –

A.     Right.

Q.     -- would you like Mr. Huang to stop contacting the Department of Homeland Security, ICE, SAPD, IRS? Would you like him to stop doing that?

A.     Yes. I don't understand for what reasons he would contact these different entities.

Chang failed to plead facts that put Huang on fair notice of her intent to seek injunctive relief. *See Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979) ("Only the relief consistent with the theory of the claim reflected in the petition may be granted under a general prayer."). As a result, the trial court lacked authority to grant such relief. *See Webb*, 298 S.W.3d at 391; *Hall v. Seal*, No. 04-09-00675-CV, 2011 WL 61631, at *4–5 (Tex. App.—San Antonio Jan. 5, 2011, pet. denied) (mem. op.).

Additionally, for injunctive relief to be proper, "the record must contain evidence supporting each injunctive provision." *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). Here, while Chang testified that the couple's reconciliation attempt failed when she learned Huang had shared her voicemails on social media, that she wanted Huang to stop contacting law enforcement agencies about this case, and that she believed she would be deported if the annulment were granted, she did not offer any testimony or other evidence showing she would suffer irreparable harm without an injunction prohibiting Huang from discussing the case with law enforcement agencies or on social media. *Cf. Sanchez*, 2007 WL 1888343, at *2 (holding evidence of family violence authorized injunctive relief prohibiting future violence). Because the trial court's permanent injunction is not based on proof of actual or threatened injury, it was an abuse of discretion. *See Holubec v. Brandenberger*, 214 S.W.3d 650, 657 (Tex. App.—Austin 2006, pet. denied); *Hall*, 2011 WL 61631, at *5.

We sustain Huang's second issue.

## CONCLUSION

We modify the trial court's judgment to delete the award of permanent injunctive relief and affirm the judgment as modified.

Beth Watkins, Justice